# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | )   **Case No. 7:13-CR-0038** |
| v. | ) |
| | ) |
| **OSHAY TERRELL JONES,** | ) |
| | ) **By: Michael F. Urbanski** |
| Defendant. | ) **Chief United States District Judge** |

## <u>MEMORANDUM OPINION</u>

"Allowing the procedural posture of this case to overrun an individual's liberty undermines the integrity of the Court system and the value society places on judges to get things right." <u>United States v. Black</u>, 388 F. Supp. 3d 682, 689 (E.D. Va. 2019).

This case is fraught with mistakes — by the petitioner proceeding <u>pro se</u>; by his trial counsel; by the prosecution; by probation; and by the court.[1] In his petition brought pursuant to 28 U.S.C. § 2255, Oshay Terrell Jones ("Oshay Jones")[2] asks the court to look past the many procedural mistakes in this case and reach the substance of his two ineffective assistance of counsel claims. Oshay Jones argues first that, but for bad legal advice from his trial counsel, he would have taken a favorable plea deal.[3] Oshay Jones also contends his trial counsel erred in failing to object to the drug weight calculated in the PSR, particularly the

---

[1] Though these errors are discussed more fully in the opinion below, the court briefly summarizes the mistakes here: (1) Trial counsel erred in telling Oshay Jones that he would be acquitted if the prosecution did not prove the drug conspiracy amounted to 280 grams of cocaine base ("crack cocaine"). (2) Trial counsel also erred in failing to object to paragraph 41 of the Presentence Report ("PSR"), which overstated the amount of crack cocaine Brandon Snead purchased from Oshay Jones. (3) As demonstrated by evidence obtained at and after the evidentiary hearing held in May 2019, the government erred in mischaracterizing plea discussions in its motion to dismiss Oshay Jones' habeas petition. (4) Oshay Jones erred in abandoning this aspect of his habeas petition in response to the government's mischaracterization. (5) Probation erred in the calculation of the drug weight in the PSR. (6) The court erred in not holding an evidentiary hearing in the first instance.

[2] The court refers to Oshay Jones by his first and last name to distinguish him from his brother and codefendant, Dominique Jones.

[3] This claim is referred to as the Plea Offer Claim.

amount of crack cocaine Brandon Snead purchased from Oshay Jones.[4] While this case is procedurally complicated, Oshay Jones asks the court to address only these two instances of ineffective assistance of counsel. For its part, the government, while acknowledging the erroneous advice of Oshay Jones' trial counsel, stands on procedure and insists that the court lacks jurisdiction to provide a remedy.

The court agrees with the government that Oshay Jones is procedurally barred from raising the Plea Offer Claim but disagrees that the Snead Drug Weight Claim is likewise barred. "In short, too much went wrong here." United States v. Lockhart, 947 F. 3d 187, 199 (4th Cir. 2020) (Wilkinson, J., concurring).

Accordingly, the court will **GRANT in part** and **DENY in part** Oshay Jones' Rule 60(b) motion as to his habeas corpus petition. As detailed herein, the court will **GRANT** habeas relief as to the Snead Drug Weight Claim and set the case down for resentencing. However, because the Fourth Circuit Court of Appeals has ruled that Oshay Jones abandoned the Plea Offer Claim, the court must **DENY** habeas relief on that claim.

## I.      Background Procedural History of Oshay Jones' § 2255 Petition.

Oshay Jones was indicted on May 16, 2013 for conspiracy to distribute 280 grams of crack cocaine and went to trial in January 2014. During trial preparation, Oshay Jones was advised by his trial counsel, based on counsel's reading of the recent decision of the Supreme Court of the United States in Alleyne v. United States, 570 U.S. 99 (2013), that the 280-gram quantity alleged in the indictment was an element of the offense. As such, trial counsel told Oshay Jones that if the 280-gram quantity was not proven at trial, he would be acquitted.

---

[4] This claim is referred to as the Snead Drug Weight Claim.

Relying on that constitutionally ineffective advice, Oshay Jones dismissed any interest in plea negotiations, including a favorable plea deal orally communicated to his prior counsel and another even more favorable deal extended to his brother, Dominque Jones, on the eve of trial.

Oshay Jones, his brother Dominique Jones, and three others went to trial and were convicted of the drug conspiracy, but not at the 280-gram level charged in the indictment. Rather, relaying on a waterfall instruction given by the court over defendants' objection, the jury found that it was reasonably foreseeable to the defendants that the conspiracy involved 28 grams of crack cocaine. At sentencing, Oshay Jones was assigned a sentencing guidelines base offense level of 34, based on the court's finding that he was responsible for 1.4 kilograms of crack cocaine.[5] With enhancements for a firearm, criminal livelihood, and role, Oshay Jones topped the total offense level chart at 42. With a criminal history category of I, Oshay Jones' advisory sentencing guideline range was calculated at 360 to 480 months imprisonment. The government recommended a sentence at the low end of the guideline range, and the court, noting his criminal history and rough upbringing, varied downwards and sentenced Oshay Jones to 280 months in federal prison.

After the Fourth Circuit Court of Appeals denied Oshay Jones' direct appeal, he filed a pro se motion under 28 U.S.C. § 2255 challenging his conviction. Mot. to Vacate, ECF No. 448. Claim One of his original habeas petition expressly asserts ineffective assistance of counsel as regards the PSR's calculation of drug weight, both as to the amount seized during

---

[5] The court found: "And that 1.4 kilograms of crack cocaine that was seized during the course of this conspiracy, that was seized alone, is really a conservative – is really a conservative estimate of the amount of crack cocaine involved, and it establishes a base offense level of 34." Tr. of Sent. Hr'g, ECF No. 406, at 25. The court based this statement on paragraph 45 of the PSR. Review of the trial transcript does not support seizure of that amount.

the conspiracy and the Snead Drug Weight Claim. Id. at 17-18. Oshay Jones filed a number

of amendments to his § 2255 petition, and on May 5, 2016 sought leave to amend his

petition to add the Plea Offer Claim as Claim 7. Mot. to Amend, ECF No. 464. On June 13,

2016, the court entered an order allowing Oshay Jones to amend his petition to add the Plea

Offer Claim as Claim 7.

On July 15, 2016, the government responded to the Plea Offer Claim, captioned as

follows: "Response to Ground Seven — Jones Can't Take Advantage of a Plea Offer That

Never Existed." Mot. to Dismiss, ECF No. 475, at 9. The government's motion explained:

> Finally, Jones charges that his attorney misadvised him on the law
> of lesser included offenses, and because of this bad advice, he
> turned down a plea offer that would have resulted in him
> receiving a sentence of ten years with no enhancements. He now
> wants the benefit of that plea agreement.
>
> An initial problem with this argument is that no such plea offer
> existed. The government has searched its files, and found only a
> draft plea agreement offered early in the case when Jones was
> represented by Mr. Beers, hereinafter attached. The agreement is
> assuredly not an agreement for 10 years, and contains
> enhancements. Exhibit 7: Unsigned Plea Agreement. Nor,
> considering the scope of Jones' involvement in the drug trade and
> the strength of the evidence available against him, would it have
> been either reasonable or likely for the government to have
> offered him such a low sentence.

Id. at 9.[6] The unsigned plea agreement attached as Exhibit 7 to the government's motion to

dismiss was anything but favorable to Oshay Jones, containing guideline stipulations of a base

offense level of 36, founded upon 2.8 to 8.4 kilograms of crack cocaine, and five enhancement

---

[6] Oshay Jones was first represented by CJA counsel Paul Beers, who served as counsel from May 30, 2013 until August 1, 2013. David Walker represented Oshay Jones during the remaining pretrial period, at the January 2014 trial, and through sentencing on June 26, 2014. On direct appeal, Oshay Jones was represented by Krysia Nelson. Oshay Jones prosecuted his § 2255 petition pro se until the court appointed the Federal Public Defender on January 4, 2019.

points for being a leader, organizer or manager and possession a dangerous weapon. Unsigned Plea Agreement, ECF No. 475-6, at 3. The government's motion to dismiss further noted that although Oshay Jones' trial counsel David Walker had filed an affidavit on April 27, 2016 supporting the § 2255 petition, that affidavit only addressed the sufficiency of the evidence presented at trial concerning drug weight, and did not address the claim that defense counsel advised Oshay Jones that he would be acquitted if the government failed to prove the existence of 280 grams. See First Walker Aff., ECF No. 460, at 2-5. The government's motion to dismiss concluded as follows: "In sum, Jones wants the benefit of an imaginary plea agreement based on an imaginary error committed by his otherwise highly experienced counsel. This claim fails because it is unsupported by fact, and is otherwise incredible." Mot. to Dismiss, ECF No. 475, at 10.

Oshay Jones filed a response to the government's motion to dismiss on August 11, 2016, in which he summarily stated that "Petitioner Moves this court to strike claims 6 and 7 from the record." Pet'r Resp., ECF No. 491, at 1. Although his response goes on for thirty pages, Oshay Jones nowhere else refers to Claim 7 (the Plea Offer Claim). Rather, the response focuses on issues concerning the drug weight attributable to Oshay Jones and guidelines enhancements for use of a firearm and his role in the conspiracy.

The court granted the government's motion to dismiss without holding an evidentiary hearing in a memorandum opinion entered on January 18, 2017. Mem. Op., ECF No. 520. In that opinion, the court addressed each of Oshay Jones' claims, making no mention of the one line from Oshay Jones' August 11, 2016 response in which he moved to "strike claims 6 and 7 from the record." Pet'r Resp., ECF No. 491, at 1. In addressing the merits of Claim 7 (the

Plea Offer Claim), the court found no prejudice resulting from counsel's faulty advice, concluding as follows:

> But even assuming that counsel erroneously advised Jones regarding lesser-included offenses, Jones cannot show that there is a reasonable probability that he would have pleaded guilty had he been correctly advised because there is no evidence that the alleged ten-year plea deal existed. The government asserts that it never offered a ten-year deal. The government found only a draft agreement providing for a base offense level of 41, including various enhancements, which did not provide for a specific sentence. Plea Agree. at 3, ECF No. 475-6. Even allowing for a three-level reduction for acceptance of responsibility, had Jones agreed to the plea, he would have faced a potential advisory guideline range of 235 to 293 months. Jones does not claim, in his § 2255, that he would have been willing to take the plea deal that the government provided. Finally, he was sentenced to 280 months' incarceration, which falls within that potential advisory range of the plea agreement. Accordingly, Jones cannot establish a "likelihood of a result more favorable" to him had he agreed to plead guilty. Strickland [v. Washington,] 466 U.S. [668,] at 695 [(1984)].

Mem. Op., ECF No. 520, at 6.

On the issue of drug weight, the court's opinion did not address Oshay Jones' claim that trial counsel was ineffective for not challenging the United States Probation Officer's finding in paragraph 41 of the PSR that Snead "bought one ounce per week for eight months at a rate of $2,000 per ounce," and in paragraph 45 of the PSR that "a total of 1.4 kilograms of crack cocaine was seized during the offense." PSR, ECF No. 341, at 13. Instead, the court focused on trial counsel's generalized objections to the drug weight attributable to him based on the jury's finding that the conspiracy did not involve more than 280 grams of crack cocaine. In characterizing Oshay Jones' claim as a generalized failure to object to drug weight, as opposed to the specific findings in paragraphs 41 and 45 of the

PSR, the court failed to address his argument that his counsel was ineffective by not objecting to the amount of crack cocaine seized as reflected in paragraph 45 of the PSR and the Snead Drug Weight Claim concerning paragraph 41 of the PSR.

On February 21, 2017, Oshay Jones filed a Motion under Federal Rule of Civil Procedure 59(e), asserting that the court misunderstood and misconstrued his argument. Rule 59(e) Mot., ECF No. 525, at 3. Oshay Jones' Rule 59(e) motion focused exclusively on his claim that the court incorrectly calculated the drug weight in this case, and did not mention the Plea Offer Claim. The court construed the motion as a successive § 2255 motion and dismissed it without prejudice on March 10, 2017. Mem. Op. and Order, ECF Nos. 532 and 534.

On April 10, 2017, Oshay Jones timely filed a notice of appeal to the order denying his habeas petition to the Fourth Circuit Court of Appeals. On November 28, 2017, the Fourth Circuit entered an order granting a certificate of appealability and ordered briefing on the court's failure to hold an evidentiary hearing on the Plea Offer Claim, as follows:

> Whether the district court abused its discretion in denying, absent an evidentiary hearing, Jones' claim that he rejected a favorable plea offer based on his trial counsel's allegedly erroneous advice.

Order Granting Certificate of Appealability, ECF No. 548.

Meanwhile, back at the district court, Oshay Jones' trial counsel, David Walker, filed on December 20, 2017, a second affidavit, this time exclusively addressing the Plea Offer Claim. In that affidavit, Walker stated as follows:

> It is my memory that Mr. Jones was offered the same plea deal that Dominique Jones was offered; that he had to testify against the rest of the co-conspirators and they would agree to a fixed term of 10 (ten) years (120 months) pursuant to 11(c)(1)(C) of

the Federal Rules of Criminal Procedure. I explained to Mr. [Oshay] Jones that if for any reason the Judge did not accept the Plea Agreement then he would be able to withdraw his plea and go to trial.

I also discussed with him a letter from Melissa Friedman to Dominique where she also suggested that he take the Plea Agreement and my memory is that he already had a copy of that letter. I remember being surprised that he had a copy of that letter so quickly.

Second Walker Aff., ECF No. 551, at 2.

A review of the Fourth Circuit's docket regarding Oshay Jones' appeal of the dismissal of his § 2255 petition reveals that in its informal response brief filed on January 26, 2018, the government took the position that Oshay Jones had abandoned Claim 7 (the Plea Offer Claim) on which the Fourth Circuit had granted a certificate of appealability. Its argument focused on the words Oshay Jones used in his August 11, 2016 response: "Petitioner Moves this court to strike claims six and seven from the record," Pet'r Resp., ECF No. 491, at 1, along with his subsequent failure to mention Claim 7 (the Plea Offer Claim) again. Gov't Informal Resp. Br., ECF No. 19, at 4-6, <u>United States v. Oshay Jones</u>, No. 17-6484 (4th Cir. Jan. 26, 2018). Oshay Jones responded by asserting that he "did not abandon his claim and never intended to do so," claiming instead that "[w]hen petitioner attempted to Strike Claim 6 and 7 from the record he was referring to the government's arguments." Oshay Jones' Informal Reply Br., ECF No. 20, at 2, <u>United States v. Oshay Jones</u>, No. 17-6484 (4th Cir. Feb. 13, 2018). It is difficult to reconcile Walker's Second Affidavit, filed in the district

court on December 20, 2017, supporting Oshay Jones' Plea Offer Claim with the assertion that Oshay Jones had abandoned this claim in August 2016.[7]

Nevertheless, in a per curiam opinion entered on March 12, 2018, the Fourth Circuit accepted the government's abandonment argument and affirmed the dismissal of the Plea Offer Claim, finding as follows:

> In its response brief, the Government contends that Jones abandoned the claim on which we granted a certificate of appealability. We agree. Jones requested that the district court strike the claim, and Jones thereafter failed to present any further argument on the claim in the district court. Jones' assertion that he was, in fact, requesting that the district court strike the Government's arguments on the claim is not credible. Accordingly, we affirm the portion of the district court's order dismissing this claim.

Mem. Op. (per curiam), ECF No. 554, at 2. Thus, although the Fourth Circuit had issued the certificate of appealability on the Plea Offer Claim, it never reached the merits of the claim as it found that Oshay Jones had abandoned it.

After the Fourth Circuit issued the mandate on his habeas appeal on May 4, 2018, Oshay Jones filed a motion under Federal Rule of Civil Procedure 60(b) asking the court to set aside its January 18, 2017, Order. Rule 60(b) Mot., ECF No. 571. Before addressing the pending Rule 60(b) motion, the court must address revelations in the parallel § 2255 proceeding filed by Oshay Jones' brother Dominique Jones.

## II.     Dominique Jones' Parallel § 2255 Petition.

---

[7] Walker's December 20, 2017 Second Affidavit does not appear to have been filed with the Fourth Circuit or docketed there.

On July 21, 2016, a few days after the government filed its motion to dismiss Oshay Jones' § 2255 petition, Oshay Jones' brother and codefendant, Dominique Jones, filed his own § 2255 motion. Dominique Jones' Mot. to Vacate, ECF No. 481. Evidentiary developments in Dominique Jones' habeas case bear to some degree on Oshay Jones' case.

Like his brother, Dominque Jones claimed that he received ineffective assistance of counsel as to whether the 280-gram amount was an element of the offense, causing him to reject a favorable ten-year plea agreement with no enhancements. In opposition to Dominique Jones' § 2255 motion, the government once again asserted that "[t]here was never any such plea agreement." Rather, "the government's records show a draft plea agreement was at one time presented to [Dominique] Jones," which, if accepted, "would have produced a guidelines sentencing range of 324-405 months of incarceration." Mot. to Dismiss Dominique Jones' § 2255 Motion, ECF No. 508, at 4.

The government's assertion that no ten-year plea deal had ever been offered Dominique Jones was undermined by a letter submitted to the court by Dominique Jones on January 9, 2017. The letter, authored by Dominique Jones' trial counsel, Melissa Friedman, referred to a ten-year plea agreement orally offered by the government pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure shortly before trial, and contained counsel's recommendation that he accept this plea. Friedman Letter, ECF No. 518-1. The court thereafter determined to conduct an evidentiary hearing in Dominique Jones' case and appointed counsel. Orders, ECF Nos. 545 and 547.

An evidentiary hearing was conducted on April 25, 2018, at which both Dominique Jones and his trial counsel testified. Minute Entry and Evidentiary Hr'g Tr., ECF Nos. 566

and 570. At the hearing, the government explained that only one written plea agreement was ever tendered to Dominique Jones, and his acceptance of that written plea agreement would have resulted in more jail time than he ultimately received. Evidentiary Hr'g Tr., ECF No. 570, at 6-7. Counsel for the government explained the existence of the recently revealed letter from Dominique Jones' counsel referencing an oral ten-year plea deal as follows:

> But, of course, doing her job, Ms. Friedman had been talking to me about maybe giving Mr. [Dominique] Jones a better deal. And as we got close to trial, I was more willing to consider that and said words to the effect of, "okay, if your client is interested in pleading guilty to ten years, you know, on a (c)(1)(C) sort of deal, come back and tell me and we'll write something up and get it to you."
>
> So nothing ever got written up because, in the course of all this, Mr. [Dominique] Jones – it seems from the letter that Ms. Friedman went and spoke to Mr. [Dominique] Jones, laid things out in the letter pretty clearly, and Mr. [Dominique] Jones was not interested in that, so nothing was ever reduced to writing.
>
> Looking – and what I have stood behind, if he had come back and said, "Yes, I would like a (c)(1)(C) for ten years," then we would have gone forward and executed that.

Id. at 7. Despite the position taken earlier by the government in its motion to dismiss Dominique Jones' habeas petition, this testimony establishes that an oral ten-year plea deal under Federal Rule of Criminal Procedure 11(c)(1)(C) was extended to Dominique Jones by the government before trial.

### III.    Procedural History of Oshay Jones' Rule 60(b) Motion.

Shortly after the Dominique Jones evidentiary hearing was held, on May 4, 2018, the Fourth Circuit issued its mandate on Oshay Jones' appeal of the denial of his § 2255 motion. Within a few weeks, on May 21, 2108, Oshay Jones filed a Rule 60(b) motion seeking relief

from the January 18, 2017 dismissal of his habeas petition, citing extraordinary circumstances. Rule 60(b)(6) Mot., ECF No. 571. Oshay Jones filed a supplemental rule 60(b) motion on July 26, 2018.

Given the revelations at Dominique Jones' evidentiary hearing, on January 4, 2019, the court entered an order appointing counsel for Oshay Jones on his motion to reconsider the January 18, 2017 order denying his § 2255 petition and establishing a briefing schedule on the motion. In that order, the court indicated that it would only address the Plea Offer Claim as the other issues "have been thoroughly considered by this court and the Fourth Circuit Court of Appeals." Order, ECF No. 594, at 2. An evidentiary hearing was held on May 23, 2019.

## A.  Oshay Jones' Rule 60(b) Evidentiary Hearing – May 23, 2019.

Three witnesses testified at the May 23, 2019 evidentiary hearing: Oshay Jones, his trial counsel, David Walker, and trial counsel for the government, AUSA Andrew Bassford. At the outset of the hearing, the government stated that it "continues to assert that it did not offer Mr. Jones a ten-year deal." Evidentiary Hr'g Tr., ECF No. 652, at 28. Counsel for the government stated that "there would have been calls for me to be fired if I had asked for Mr. Jones to get ten years. The police chief would have gone to the U.S. Attorney and demanded that I be removed from the case and/or disciplined. I don't – I could not have gotten law enforcement approval for that. I doubt I could have gotten managerial approval for that." Id. at 28-29.

Oshay Jones testified that he was approached by his counsel David Walker shortly before trial and was told that the government was offering him a plea for 12 years which could be lowered upon cooperation. The week before trial, the government offered him a ten-year

deal which would be lowered by 25 per cent if he testified against codefendant Jawaan Turner. Id. at 64-65. Oshay Jones testified that he responded by saying "They're lying about the drugs; I ain't gonna take that plea." Id. at 64. Oshay Jones testified that he learned that the government had offered his brother a ten-year plea agreement. Id. at 66-67. Oshay Jones testified that he responded to Walker: "I said – I said, 'The witnesses is lying about them drugs.' I said, 'I did not sell the amount of drugs that they said, the crack.' I said, 'I was selling drugs, but not that amount.'" Id. at 67. As regards the legal advice he received, Oshay Jones testified that his counsel told him "[i]f the government don't prove it's 280 grams, based on the case law right here, you're going to be acquitted of this charge." Id. at 70. Later, Oshay Jones testified "Walker, basically, he said, 'Oshay, don't plead to this; they got to prove this 280 grams.'" Id. at 98. As regards his reliance on his counsel's advice, Oshay Jones testified:

> [I]f Walker didn't give me that bad advice, I would have took the plea for the ten years, because there wasn't no benefit for me going to trial. I wasn't going to deny the conspiracy. All I'm saying is, like, I didn't sell 280 grams, and I could prove my case that I didn't sell 280.

Id. at 74. Although Oshay Jones repeatedly testified that he signed a document reflecting that he declined the plea offer, id. at 65, 76, 90-92, 99, such a document has never surfaced.

Oshay Jones' trial counsel, David Walker, also testified at the evidentiary hearing. Walker testified that he did not "remember being offered the plea agreement. I remember talking to him about a plea agreement, but I never remember Andrew offering – I mean, Mr. Bassford offering me a plea agreement." Id. at 107. While Walker's memory was hazy on certain details, he recalled that his client was not interested in a plea agreement. Id. When asked about plea discussions with the government in this case, Walker testified:

I don't remember. I don't remember ever talking to Mr. Bassford about a plea agreement. But I don't remember a lot of things about this case. And if it hadn't been for Melissa Friedman's letter, I would not have – my memory was that there wasn't a plea agreement. But when I saw that, it just – it was so shocking to me that he was in jail and got that. That was something unusual. It was not something I was used to.

Id. at 121.

Walker testified that his memory of events was refreshed by seeing Melissa Friedman's letter to Dominique Jones. In fact, Walker testified that he had contemporaneous discussions with Oshay Jones about the plea offer mentioned in Friedman's letter to Dominique Jones. Walker testified that he was shocked that Oshay Jones, who was housed in a different pod at the jail from Dominique Jones, had the Friedman letter within a day of Dominique Jones receiving it. Id. at 108-109. Walker testified:

I remember talking about a plea offer. I remember having discussions whether he would be interested in one. I – and I remember this letter. And I remember that somebody told me – it could have been Oshay. It could have been Andrew. It could have been me telling him. I don't know. But I have a memory of talking to Oshay about this particular plea agreement that had been previously offered to Dominique; and, at least in my mind at the time, I thought it had been offered to Oshay.

Id. at 110. When pressed on specifics, Walker stated:

I don't – my memory of two thousand – of that trial – that was the week of the trial. We were – it was a very, very big, long trial, with lots of discovery. It was – I was busy as hell. And I just – I remember that we were talking about, would he be interested in a plea, whether it was the – and it was these parameters that I was asking about, what's in the letter.

Id. at 111.

At the same time, Walker testified about his response to an email inquiry from AUSA Bassford in July 2016, where Walker wrote: "If I were called to testify, I would testify that I do not recall any plea deal being offered, nor do I recall Oshay asking about a plea deal." Email String, ECF No. 616-1, at 1. When questioned about this email at the evidentiary hearing, Walker testified "[t]hat was my memory at that time." Evidentiary Hr'g Tr., at 112. Walker testified that his memory was jogged after he found Friedman's letter. Id. at 115. Consistently, Oshay Jones testified that Walker's Second Affidavit came about after he sent Walker a copy of Friedman's letter to Dominique Jones, confirming Dominique's pretrial decision to decline the ten-year plea offer. Id. at 81-82.

At the end of the day, Walker testified that shortly before trial he became aware of Friedman's letter and "had a discussion with Oshay about taking a plea or not taking a plea." Id. at 116. Walker advised Oshay Jones "[t]hat if this plea were offered to him and we could get this in writing, that he needed to take it." Id. at 117. In response, Oshay Jones asked Walker about what defenses he had at trial. Walker advised Oshay Jones as follows:

> Well, at that time I had read the Alleyne versus United States. And at that time, I was under the evidently false impression that the 280 grams that the government indicted him on was an element of the offense.
>
> And so I said, "If we can get the jury to believe that there was less than two – that you distributed less than – there's no proof beyond a reasonable doubt that you were less than 280 grams, and, in fact, you're not guilty of that, the if that's an element, that being an element of [the offense], then that would mean that you would be not guilty."

Id. at 117-118.

After being reminded of the Friedman letter in 2017, Walker executed and docketed his Second Affidavit on December 20, 2017 stating that he recalled Oshay Jones being offered the same plea deal offered to his brother Dominique Jones. Id. at 127, 131; Second Walker Aff., ECF No. 551.

In addition, it was Walker's understanding that any plea agreement would involve Oshay Jones' cooperation with the government, as to which his client was not interested. Evid. Hr'g Tr., ECF No. 652, at 132-133.

Oshay Jones called the AUSA who prosecuted the case, Andrew Bassford, as a witness. Bassford explained:

> Your Honor, Mr. Jones filed his 2255 with great certainty that there was a plea agreement. I didn't remember any such thing, and as I've said before, did not believe that there was one. But it's always better to ask the question and find the truth, as opposed to just boldly asserting something arrogantly and then be proven wrong. So I approached Mr. Walker as genteelly as I could.

Id. at 144. At that point, in July, 2016, Bassford and Walker had exchanged emails about the existence of a written plea agreement. Id. at 141-145; see Email String, ECF No. 616-1. In explaining the government's assertion in the motion to dismiss that no plea agreement existed, Bassford explained that when he drafted the motion to dismiss, he relied on Walker's email, ECF No. 652, at 148, and testified as follows:

> But if I didn't offer a plea agreement, and I don't remember a plea agreement, and Mr. Walker says he doesn't remember a plea agreement, that to me means there was no plea agreement.

Id. at 147.[8]

Bassford conceded that his memory was refreshed as to the existence of an oral plea offer in Dominique Jones' case. Id. at 154. As regards plea negotiations with counsel for Dominique Jones, Bassford acknowledged that he agreed with Friedman that if Dominique Jones would accept the ten-year Rule (11)(c)(1)(C) plea, he would ask the court to accept it. Id. at 160. At the same time, Bassford remained firm that no ten-year plea offer was tendered to Oshay Jones given the seriousness of that prosecution. Bassford explained that local police officers "were very, very serious about seeing Oshay Jones convicted and given a long sentence. They would have viewed a ten-year plea agreement as frivolous and insulting." Id. at 157.

At the close of the evidence, the court summarized as follows:

> Although, you know, I feel like, after sitting here and listening to Mr. Jones and Mr. Walker, that I think I have a really good understanding of what happened in this case, and that is that Dominique Jones got – that Melissa Friedman went to Mr. Bassford and said, "If I can get him to take ten years, will the government agree to it?" Mr. Bassford agrees to it. She goes and talks to Dominique. There is a – he doesn't accept it; he won't accept it. She writes a letter confirming it, and that letter somehow makes its way down to Oshay Jones. Mr. Oshay Jones talks with David Walker about it, and Oshay Jones does not accept the – based on the advice of Mr. Walker, is not interested in such a plea deal as well. I think that's what the evidence shows. I think that's the way this comes out.

Id. at 175.

### B. Post-Hearing Procedure and Briefing.

---

[8] Bassford testified that he "combed the records in this case, looking for any and everything bearing on what the defendant had to say in his pleading." Id. at 156.

Following the evidentiary hearing, the court entered an order outlining issues on which it needed briefing, including the appropriateness of a Rule 60(b) motion; the timeliness of a Rule 60(b) motion; and Strickland v. Washington, 466 U.S. 668 (1984), prejudice. Order, ECF No. 624. An additional status conference was held on June 3, 2019 at which the court and counsel discussed issues to be addressed on brief, a briefing schedule, and a dispute over access to Walker's recently located file. The court outlined the issues facing the court, including whether a Rule 60(b) avenue was available to Oshay Jones or whether his motion should be appropriately considered a successive § 2255 petition. Upon questioning by the court, the government declined to waive a timeliness defense under Rule 60(b), taking the position that no injustice transpired in this case due to the lack of prejudice. The government responded that "[i]n this case there has been no evidence, neither documentary nor testimonial, that the government was ever willing to entertain any plea deal with respect to Mr. Jones." Tr. of Status Conference, ECF No. 654, at 9.

The next day, June 4, 2019, counsel for Oshay Jones submitted a June 26, 2013, letter, discovered in the files of Oshay Jones' former CJA counsel Paul Beers, discussing a fourteen-year non-cooperation plea deal Beers had discussed with the government and confirming Oshay Jones' lack of interest in such a plea agreement. June 26, 2013, Letter from Paul Beers to Oshay Jones, ECF No. 638-1. In submitting this letter, counsel for Oshay Jones stated:

> Counsel respectfully submits that this letter conclusively demonstrates that the government's statements in its original motion to dismiss Mr. Jones's petition, that no plea offer was ever made, were incorrect. See Federal Rule of Civil Procedure 60(b)(3); United States v. Williams, No. 18-6797, 2019 U.S. App. LEXIS 4892, 2019 WL 719035 (4th Cir. Feb. 20, 2019).

> The letter further refutes the May 2019 testimony by the government prosecutor that he never made any plea offer to Mr. Jones that did not require cooperation; that he never would have offered a plea agreement in line with Mr. Jones's testimony; and that no oral plea offers to counsel for Mr. Jones were ever made.

Am. Submission of Add'l Evidence, ECF No. 638, at 1-2.

The government responded on July 18, 2019, asserting that following review of the late-breaking Beers letter and the May 23, 2019 testimony at the evidentiary hearing, its "position remains the same: the Court lacks jurisdiction over this matter and Federal Rule of Civil Procedure 60(b) does not vest this Court with jurisdiction." Response, ECF No. 661, at 1. The government disagreed that the new Beers letter supported Oshay Jones' claim that the government misrepresented the existence of a plea agreement in its motion to dismiss, distinguishing plea discussions with Beers from the "the 10-year plea offer allegedly made to David Walker that underpins Jones' habeas petition and Rule 60(b) motion." Id. at 5. The government also disputed that this letter was inconsistent with the testimony at the evidentiary hearing, stating "counsel's aspersions about AUSA Bassford's testimony are not supported by the transcript, and counsel's conclusions and empty rhetoric should be rejected." Id. at 7.

On July 15, 2019, Oshay Jones sought leave of court to brief the Snead Drug Weight Issue, arguing that although he had raised this claim, the court had not addressed it. Mot. to Permit Briefing of Add'l Issue Previously Raised But Never Ruled On, ECF No. 658. Specifically, Oshay Jones contends that the court, while addressing other drug weight issues, never specifically addressed his claim that his trial counsel was ineffective for not objecting to the probation officer's miscalculation of the drug weight sold to Brandon Snead as reflected

in paragraph 41 of the PSR. In order to fully address all issues in this case, the court permitted Oshay Jones to brief this issue. Oral Order, ECF No. 660.

With this procedural backdrop, Oshay Jones filed his post-hearing brief on September 17, 2019, and the government filed its opposition on December 13, 2019.  At this point, Oshay Jones asks that the court vacate his judgment and implement one of three remedies for the claimed ineffective assistance of counsel: (1) Permit him to accept the plea offer made in 2013; (2) retry the case; or (3) grant a full resentencing.

## IV.     Jurisdiction of the Court to Address Oshay Jones' Claims.

### A. Federal Rule of Civil Procedure 60(b).

Rule 60 permits a court to correct orders and provide relief from judgment under the following circumstances:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b) is an "extraordinary remedy" which sets aside "the sanctity of [a] final judgment." Compton v. Alton Steamship Co., Inc., 608 F.2d 96, 102 (4th Cir. 1979) (citation and internal quotation marks omitted). A court must balance the competing policies favoring the finality of judgments and justice being done in view of all of the facts, to determine, within its discretion, whether relief is appropriate in each case. Compton, 608 F. 2d at 102; Square Const. Co. v. Washington Metro. Area Transit Auth., 657 F. 2d 68, 71 (4th Cir. 1981).

A Rule 60(b) motion must be made within a "reasonable time," and for reasons (1) through (3), "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). The party moving for relief from judgment under Rule 60(b) bears the burden of showing timeliness. Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC, 859 F.3d 295, 300 (4th Cir. 2017). A movant must first show that he has moved in a timely fashion, that he has a meritorious defense to the judgment, that the opposing party would not be unfairly prejudiced by a set aside, and show exceptional circumstances. See Aikens v. Ingram, 652 F.3d 496, 501 (4th Cir. 2011); Werner v. Carbo, 731 F.2d 204, 206-07 (4th Cir. 1984) (citing Compton, 608 F.2d at 102). If a movant satisfies these three requirements, then he must show that his motion falls under one of the six grounds set forth in Rule 60(b). Werner, 731 F.2d at 207.

Because the time limit in Rule 60(c) is an affirmative defense, and not a jurisdictional bar, it is subject to equitable tolling. Equitable tolling is appropriate in those "rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation against the party and gross injustice would result."

Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000) ("§ 2255's limitation period is subject to equitable modifications such as tolling."). Equitable tolling of petitions for collateral review is available only when a defendant demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DeGuglielmo, 544 U.S. 408, 418 (2005)). "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe of Wis. v. United States, 136 S.Ct. 750, 756 (2016) (emphasis in original).

**B. Application of Rule 60(b) to Oshay Jones' Two Pending § 2255 Claims.**

As outlined above, Oshay Jones presents two Rule 60(b) claims, the Plea Offer Claim and the Snead Drug Weight Claim, which he argues arise under Rule 60(b)(3) and 60(b)(6), respectively.

### 1. Plea Offer Claim.

Citing Lafler v. Cooper, 566 U.S. 156, 174 (2012), Oshay Jones claims that his counsel's deficient advice caused him to reject a favorable plea deal, violating the Sixth Amendment.[9] In

---

[9] Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. at 687. In order to establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: He must show both that (1) counsel's performance fell below an objective standard of reasonableness; and (2) he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at

<u>Lafler</u>, the defendant, relying on ineffective advice of counsel, declined a favorable plea offer and went to trial, resulting in a longer sentence than reflected in the plea bargain. The Court held:

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more serious sentence. . . .
>
> If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise.

<u>Id.</u> at 168. Here, as in <u>Lafler</u>, both sides agree that Oshay Jones was provided constitutionally ineffective assistance of counsel regarding trial counsel's advice that Oshay Jones would be acquitted if the government could not prove the 280 grams of crack cocaine charged in the indictment. The parties disagree as to whether a plea offer was made to Oshay Jones.

The facts revealed at the evidentiary hearing and subsequently provided to the court establish that the government discussed the terms of proposed plea agreements on more than one occasion. The record reflects that Oshay Jones was offered a written plea agreement early on while he was still represented by Paul Beers, which was rejected as being unfavorable.[10] Later, counsel for the government and Beers discussed a more favorable plea agreement for a

---

688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689.

To satisfy the prejudice prong of <u>Strickland</u>, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

[10] This written proposal contained stipulations yielding an advisory sentencing guidelines range of 235-293 months. Unsigned Plea Agreement, ECF No. 475-1, at 3. As the court's January 18, 2017 memorandum opinion noted, Oshay Jones' sentence of 280 months fell within this range. Mem. Op., ECF No. 520, at 6.

14-year sentence, which could be further reduced if Oshay Jones cooperated. June 26, 2013, Letter from Paul Beers to Oshay Jones, ECF No. 636-1. Still later, and immediately before trial, the government offered Oshay Jones' brother and codefendant, Dominique Jones, a ten-year binding plea agreement. Oshay Jones got wind of the plea offer and discussed it with his counsel, testifying that he rejected it based on his counsel's faulty <u>Alleyne</u> advice. <u>See</u> Second Walker Aff., ECF No. 551, at 2; Friedman Letter, ECF No. 518-1; Evidentiary Hr'g Tr., ECF No. 652, Test. of Oshay Jones, at 74.

As to the Plea Offer Claim, it is worth noting that Oshay Jones does not contend that the government intentionally misrepresented the nature of plea negotiations when it filed its motion to dismiss the § 2255 petition.[11] Rather, Oshay Jones maintains that the government's assertion that it only offered Oshay Jones the Unsigned Plea Agreement is demonstrably mistaken, as evidenced by the Friedman letter, the Second Walker Affidavit and the Beers' letter. Because the court relied on the government's representation that no ten-year plea agreement existed when it granted the government's motion to dismiss, Oshay Jones asserts that the court has jurisdiction to consider his claim under Rule 60(b)(3).

As much as the court is now convinced that Oshay Jones was prejudiced by ineffective assistance of counsel on the <u>Alleyne</u> issue, two procedural hurdles stand in the way of the court reaching the merits of the Plea Offer Claim. First, Oshay Jones missed the one-year time

---

[11] The court agrees. Based on the evidence presented at the evidentiary hearing, including the testimony of Walker and Bassford, as corroborated by the substance of their July 2016 email string, ECF No. 616-1, it is clear that the government did not intentionally misrepresent the state of plea negotiations in its July, 2016 motion to dismss. While evidence adduced at the evidentiary hearing suggests now that the government's brief was mistaken, the court specifically finds that counsel for the United States acted in good faith based on the information available at the time.

period for filing a Rule 60(b)(3) claim. Second, the Fourth Circuit held in its March 12, 2018

per curiam memorandum opinion that Oshay Jones abandoned this claim.

As regards the timeliness of the Plea Offer Claim, Oshay Jones principally relies on

United States v. Williams, 753 F. App'x 176 (4th Cir. 2019) (per curiam). In Williams, a

petitioner claimed that the government made "material misrepresentations during the original

§ 2255 proceeding that prevented him from fully and fairly presenting certain ineffective

assistance of counsel claims." Id. at 177. Some five years after the dismissal of his § 2255

petition, Williams raised concerns about DNA testing based on claimed newly discovered

evidence. The district court rejected Williams' motion as being an unauthorized, successive §

2255, and Williams appealed. The Fourth Circuit Court of Appeals agreed with Williams that

his claim should be allowed to proceed under Rule 60(b)(3) and remanded the case to the

district court to address whether his Rule 60(b)(3) motion was timely filed.

On remand, Williams argued that his claim was filed within a year of obtaining

documents from new counsel forming the predicate for Rule 60(b)(3) relief. Williams argued

"that this withholding of evidence and purposeful misconduct prevented him from seeking

Rule 60(b)(3) relief sooner and prevented him from having a full and fair § 2255 proceeding

because the Court relied on the Government's misrepresentations in denying § 2255 relief."

Order, Williams v. United States, No. 5:08cv41-KDB, ECF No. 116, at 5 (W.D. N.C. Sept.

10, 2019).  The district court found Williams' Rule 60(b)(3) claim to be untimely as he filed it

more than one year after the entry of judgment and equitable tolling was not warranted. As to

traditional equitable tolling, the district court noted that Williams "has not demonstrated that

extraordinary circumstances exist that would make it unconscionable to enforce the statute of

limitations and that gross injustice would result from doing so." Id. at 14 n.5. In particular, the court found that the new evidence did not establish Williams' factual innocence, and that errors in the DNA analysis would only have provided impeachment evidence. Moreover, the court found no clear and convincing evidence of misrepresentation on the part of the government, concluding that Williams' "claim is more accurately a claim of newly discovered evidence that should have been raised under Rule 60(b)(2)." Id. at 17.

In its opposition to Oshay Jones' Rule 60(b)(3) motion on the Plea Offer Claim, the government adheres to its position that no ten-year plea offer was ever extended to Oshay Jones. Accepting the government's representation at face value, the court dismissed Oshay Jones' original petition. Mem. Op., ECF No. 520, at 6. Even now, with the benefit of an evidentiary hearing, it remains murky as to what the government offered Oshay Jones. Plainly, the issue is not as clear-cut as the government represented in its original motion to dismiss. There, it stated rather categorically that "[a]n initial problem with this argument is that no such plea offer existed. The government has searched its files and found only a draft plea agreement offered early in the case when Jones was represented by Mr. Beers, hereinafter attached. The agreement is assuredly not an agreement for 10 years, and contains enhancements." Mot. to Dismiss, ECF No. 475, at 9. The evidentiary hearing established that Oshay Jones was aware of the ten-year plea agreement offered to his brother Dominique and determined not to pursue it based on his counsel's advice that he would be acquitted if the government could not prove the 280 grams. Further, the Beers letter provided after the evidentiary hearing established that Oshay Jones' counsel and the government had plea discussions in the 14-year range. With the benefit of 20/20 hindsight, the court should have convened an evidentiary hearing on this

issue when it was first raised instead of granting the government's motion to dismiss, and the Fourth Circuit was correct to grant a certificate of appealability on this issue.

Plainly, Oshay Jones' Rule 60(b)(3) motion, filed as it was on May 21, 2018, is time-barred under Rule 60(c) as it was filed more than a year after the court's dismissal of his § 2255 petition in January 18, 2017 or the denial of his Rule 59 motion on March 10, 2017. While Oshay Jones' Fourth Circuit appeal was pending throughout most of that period,[12] "[i]t is well-established that the pendency of an appeal does not toll the one-year maximum period for filing motions under Rule 60(b)(1)-(3)." Federal Land Bank of St. Louis v. Cupples Bros., 889 F.2d 764, 766-67 (8th Cir. 1989); Nevitt v. United States, 886 F.2d 1187, 1188 (9th Cir. 1989); Hancock Indus. v. Schaeffer, 811 F.2d 225, 239 (3rd 1987) ("The one year time limit is not extended by the maintenance of an appeal."); Carr v. District of Columbia, 543 F.2d 917, 925-26 (D.C. Cir. 1976) ("We see no elasticity in Rule 60(b)'s one-year time limit on motions to which it applies; it is not judicially extendable, nor does an appeal from the judgment have the effect of tolling or enlarging it."); Transit Cas. Co. v. Security Trust Co., 441 F.2d 788, 791 (5th Cir. 1971) ("Although plaintiffs appealed from the order of dismissal, such appeal does not toll the time for making a 60(b) motion."). While it does not appear that the Fourth Circuit has spoken on this issue, a number of district courts in this circuit have so held.

> That the Plaintiff had filed a notice of appeal in the interim is immaterial for the purposes of the one-year time limitation. See Quality Tech Co. v. Stone & Webster Eng'g Co., Inc., 7 F.3d 234 (6th Cir. 1993) (unpublished per curiam opinion) ("Even though the case was pending on appeal, the one-year time period for filing a motion under Rule 60(b) is not extended.") (citing Goland v. CIA, 607 F.2d 339, 372 (D.C. Cir. 1978) ("The one-year period

---

[12] The Fourth Circuit issued its mandate on May 4, 2018, and Oshay Jones filed the pending Rule 60(b) motion on May 21, 2018.

[for filing a Rule 60(b) motion] is not tolled by a pending appeal, and under the federal rules no court has power to extend the deadline.") cert. denied, 445 U.S. 1312 (1980).

Wilder v. Irvine, No. 6:08cv0020, 2009 WL 3665843, at * 2 (W.D. Va. Nov. 3, 2009). See

United States v. Mizrach, Civ. No. WDQ-11-1153, 2012 WL 414806 (D. Md. Feb. 7, 2012);

Brockenbrough v. Johnson, 2:07cv423, 2012 WL 5423706 (E.D. Va. Nov. 6, 2012). As Oshay

Jones' Rule 60(b)(3) motion was not filed within one year of the district court's dismissal of

his § 2255 petition, it is time-barred.

Nonetheless, the court will consider whether the time for filing Oshay Jones' Rule

60(b)(3) motion should be extended under the doctrine of equitable tolling. Oshay Jones

argues that the government misrepresented the nature of plea offers available to him in its

motion to dismiss. There, the government stated that Oshay Jones had not been offered a ten-

year plea deal and that the only plea agreement found in its file was an unsigned one providing

for a guidelines sentence consistent with the sentence Oshay Jones ultimately received.

Evidence obtained during and after the evidentiary hearing point to the existence of oral plea

discussions between counsel for the government and counsel for Oshay Jones and his brother

Dominique involving far shorter sentences than the one Oshay Jones is currently serving. The

court only became aware of these oral plea discussions after revelation of the Freidman letter

and the evidentiary hearing held in Dominique Jones' case on April 25, 2018. Less than a

month later, on May 21, 2018, Oshay Jones filed his Rule 60(b) motion.

Based on these unique circumstances, an argument can be made that equitable tolling

ought to apply to Oshay Jones' Rule 60(b)(3) motion. Indeed, before the April 25, 2018

evidentiary hearing in Dominique Jones' case, the government was steadfast in maintaining

that no ten-year plea deals had been offered in either brother's case. On the other hand, to the extent that the government's motion to dismiss was misleading on the issue of plea offers extended to him, Oshay Jones certainly knew of these plea offers as evidenced by his testimony at his own evidentiary hearing. Given his knowledge of the plea offer extended to him as reflected in the Beers letter of June 26, 2013, and his discussions with David Walker on the eve of trial about the letter Melissa Friedman sent his brother Dominique Jones, Oshay Jones can hardly blame his untimely filing of his Rule 60(b)(3) motion on the claimed misleading position taken by the government in its motion to dismiss. In short, misleading as Oshay Jones claims the motion to dismiss to be, he is in no position to claim that it "stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. at 649.

Even were the court to find equitable tolling applied to Oshay Jones' Rule 60(b)(3) motion concerning the Plea Offer Claim, it is otherwise procedurally barred because the Fourth Circuit has held that claim to be abandoned, finding Oshay Jones' arguments to the contrary to be "not credible." Mem. Op. (per curiam), ECF No. 554, at 2. As a result, regardless of the substantive merits of Oshay Jones's Plea Offer Claim under Lafler, the time limits of Rule 60(c) and the Fourth Circuit's prior ruling on abandonment prevent this court from reaching the merits of that claim.

### 2. Snead Drug Weight Claim.

The same is not true with the Snead Drug Weight Claim. As regards that claim, Oshay Jones relies on the "catch-all clause" of Rule 60(b)(6) providing "the court with a grand reservoir of equitable power to do justice in a particular case and vest[ing] power in courts adequate to enable them to vacate a judgment whenever such is appropriate to accomplish

justice where relief might not be available under any other clause in 60(b)." Compton, 608 F.2d at 106-07 (internal citations and quotations omitted). Unlike Rule 60(b)(3), a motion under Rule 60(b)(6) is not bound by the hard and fast one-year time limit; it need only be brought within a reasonable time.

Oshay Jones complains that trial counsel failed to object to the miscalculation of the drug weight attributable to him in the PSR. In that regard, Oshay Jones claims that the probation officer mischaracterized Brandon Snead's trial testimony as to the amount of crack cocaine Snead purchased from him. Oshay Jones asserts that neither this court nor the court of appeals addressed this argument in their habeas rulings.

Oshay Jones claims that the court's January 18, 2017 memorandum opinion mischaracterized his argument that his counsel was ineffective for failing to object that the PSR miscalculated the drug weight attributable to him and never addressed his claim on the merits. The government counters that the Fourth Circuit rejected this claim on direct appeal and previously declined to grant a certificate of appealability on this issue, leaving nothing for this court to decide.

On direct appeal, Oshay Jones argued that the drug weight calculations in the PSR were erroneous for "double counting," as follows:

> It is clear that the Report's calculation suffers from double counting. The money that was converted into drug weight necessarily included money received for drugs that were also included in the drug weight. Also, the powder cocaine included in the PSIR was converted to crack cocaine that had already been included in the calculation. Finally, the calculation included historical drug weight taken from government reports of statements provided by unreliable 'snitch-type' witnesses. The factual findings in the PSIR were clearly erroneous and thus the Court did not properly rely on them for the proposition that 1.4

> kilos had been "seized" from the conspiracy when the evidence summarized in the PSIR supports the conclusion that only 267.7 grams had been seized.

Consol. Opening Br. of Appellants, ECF No. 47, at 39, <u>United States v. Oshay Jones</u>, No. 14-4508 (4th Cir. Dec. 23, 2014). The Fourth Circuit denied Oshay Jones' direct appeal, and on the issue of drug quantity stated, "[w]e conclude that the Jones's fail to affirmatively show that the court relied on unreliable information." Mem. Op., ECF No. 554, at 10 (per curiam). The government argues that the Fourth Circuit's ruling on direct appeal precludes Oshay Jones' habeas claim. Oshay Jones argues that his appellate counsel did not raise on direct appeal the Snead Drug Weight Claim. On this score, Oshay Jones' point is well taken as his appellate brief does not directly address the issue Oshay Jones now raises regarding the overstatement in paragraph 41 of the PSR. While the brief on direct appeal notes that Snead testified that he purchased "a total amount of not more than one ounce," <u>id.</u> at 18, its argument focused on the unreliability of Snead's testimony, rather than the overstatement in the PSR about the amount of crack cocaine bought by Snead. In particular, the brief argued that while Snead testified that he texted Oshay Jones one to five times a week to buy crack, the data on Oshay Jones' cell phone only contained two texts. <u>Id.</u>

Unlike in his direct appeal, Oshay Jones clearly raised the Snead Drug Weight Claim in his habeas petition. Oshay Jones asserts that the court misunderstood the Snead argument and never addressed it, instead characterizing, and dismissing, his claim as challenging the reliability of the government's witnesses. Oshay Jones is again correct as it appears that neither the January 18, 2017 memorandum opinion nor the March 10, 2017 order

denying the motion to reconsider address the Snead Drug Weight Claim. Nor did the Fourth Circuit grant a certificate of appealability on this claim.

The government asserts that the court lacks jurisdiction under Rule 60(b)(6) to address the Snead Drug Weight Claim as that issue was raised and decided by the Fourth Circuit, both on direct appeal and in his habeas petition. The government argues that this procedural history establishes that Oshay Jones had his one bite at the apple and is procedurally barred from obtaining a ruling on the merits. At the outset, it seems incongruous that Oshay Jones is barred from asking the district court to address a claim he previously asserted but the court never addressed. The fact that the court of appeals did not grant Oshay Jones a certificate of appealability on this issue cannot erase the reality that the district court never addressed it in the first instance. Oshay Jones is not improperly seeking a second bite at the apple; rather he is asking the court, for the first time, to sink its teeth into the Snead Drug Weight Claim. As such, the court finds that Oshay Jones may proceed under Rule 60(b)(6) as regards the Snead Drug Weight Claim.

The government argues that Oshay Jones' motion be considered a successive habeas petition under Gonzalez v. Crosby, 545 U.S. 524, 532 n.5 (2005), because it is "a second chance to have the merits determined favorably." This argument misses the mark. Oshay Jones does not seek a second ruling from the court on the Snead Drug Weight Claim; rather, because the court failed to address it previously, he asks the court for a ruling in the first instance. The

Snead Drug Weight Claim does not constitute an impermissible successive petition when the court simply failed to address it the first time around.[13]

In <u>Gonzalez</u>, the Supreme Court addressed the interplay between Federal Rule of Civil Procedure 60(b) and "second or successive" habeas corpus petitions under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(b). The Court noted that "AEDPA did not expressly circumscribe the operation of Rule 60(b)." 545 U.S. at 529. <u>See</u> <u>United States v. Winestock</u>, 340 F.3d 200, 206-07(4th Cir. 2003) ("We emphasize that we do not require that all Rule 60(b) motions be treated as successive applications; instead, the proper treatment of the motion depends on the nature of the claims presented."). Where, as here, "a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings," <u>Gonzalez</u>, 545 U. S. at 532, a Rule 60(b) motion is appropriate.

> There may be no infallible test for making this distinction, but a relatively straightforward guide is that a motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application, while a motion seeking a remedy for some defect in the collateral review process will generally be deemed a proper motion to reconsider.

<u>Winestock</u>, 340 F.3d at 207. Here, Oshay Jones seeks to rectify just such a defect in his habeas proceedings as he has identified a claim the court simply failed to address previously. These "'extraordinary circumstances' justify[ ] the reopening of a final judgment." <u>Gonzalez</u>, 545 U.S. at 535 (citing <u>Ackermann v. United States</u>, 340 U.S. 193, 199 (1950); <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 864 (1988)).

---

[13] To the extent that the court's order of January 4, 2019 states that the Snead Drug Weight Claim was "thoroughly considered by this court and the Fourth Circuit Court of Appeals," Order, ECF No. 594, at 2, that order is plainly erroneous.

Unlike the circumstances in the case principally relied upon by the government, <u>Aikens v. Ingram</u>, 652 F.3d at 503, the present case does not present a "predicament [that] was as much the result of [Oshay Jones'] management of the action and his litigation strategy choices as it was the result of the district court's erroneous judgment of dismissal." In contrast to the Plea Offer Claim, Oshay Jones never chose to abandon or failed to raise the Snead Drug Weight Claim. Instead, the court simply failed to address it. Under these extraordinary circumstances, the court believes that the Rule 60(b)(6) motion should be granted as "such action is appropriate to accomplish justice." <u>Klapprott v. United States</u>, 335 U.S. 601, 614-15 (1949).[14]

> In determining whether to exercise the power to relieve against a judgment under 60(b), the courts must engage in the delicate balancing of "the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of All the facts."

<u>Compton</u>, 608 F.2d at 102 (quoting <u>Bankers Mortgage Co. v. United States</u>, 423 F.2d 73, 77 (5th Cir. 1970)).

In this case, that "delicate balance" weighs in favor of the "incessant command of the court's conscience that justice be done in light of All the facts," <u>id.</u>, and requires the court to grant Oshay Jones' habeas petition as to the Snead Drug Weight Claim and set this case down for resentencing.

In contrast to the Plea Offer Claim, the Snead Drug Weight Claim is straightforward. At trial, Snead testified that he met Oshay Jones in January 2012, and began buying crack

---

[14] Nor is Oshay Jones' Rule 60(b)(6) claim untimely, especially as he has repeatedly tried to get the court to squarely address the Snead Drug Weight Claim.

cocaine from him. Snead principally communicated with Oshay Jones by text, and testified that on average, between January and August of 2012 he bought crack cocaine from Oshay Jones two to three times a week, in amounts from $60 to $350. Trial Tr., ECF No. 400, at 7-8. Snead testified that he made small purchases that cumulatively totaled an ounce of crack, spending $2,000. Id. at 16. In stark contrast to this testimony, paragraph 41 of the PSR stated that Snead "estimated he bought one ounce per week for eight months at a rate of $2,000 per ounce." PSR, ECF No. 341, ¶ 41. In drug quantity terms, there is a substantial difference between Snead's testimony that he bought a total of one ounce from Oshay Jones, and the PSR's recitation that Snead bought a ounce of crack cocaine from Oshay Jones every week during the January to August 2012 period. This gross overstatement of drug quantity, not objected to by trial counsel, appears to have factored into the total quantity of 1,442.2 grams of crack cocaine calculated in paragraph 45 of the PSR, from which the Base Offense Level was calculated in paragraph 51. As such, the Snead Drug Weight Claim is meritorious. To be sure, the transcript of the Snead testimony was not filed until September 4, 2014, after Oshay Jones was sentenced. Regardless, the court finds that trial counsel's failure to object to the overstatement of the quantity of crack cocaine purchased by Snead was constitutionally ineffective and prejudiced Oshay Jones by inflating the Base Offense Level used for sentencing.[15]

---

[15] The court can discern no prejudice to the government from this finding as the government has an interest in making sure that sentences imposed are appropriately grounded in the evidence.

## V.    Conclusion.

The government argues that the interests of justice in maintaining the finality of Oshay Jones' judgment should carry the day and prevent the court from addressing trial counsel's error in not objecting to the PSR's overstatement of the amount of crack cocaine purchased from Oshay Jones by Snead. Because the court did not recognize, much less address, this aspect of Oshay Jones' ineffective assistance of counsel claim, the court concludes that the interests of justice in not perpetuating the continuation of this error require the court to grant the Rule 60(b) motion on the Snead Drug Weight Claim and resentence him.

Accordingly, the court will enter an order **GRANTING in part** and **DENYING in part** Oshay Jones' Rule 60(b) motion as to his habeas corpus petition. As detailed herein, the court will **GRANT** habeas relief as to the Snead Drug Weight Claim and set the case down for resentencing. However, because the Fourth Circuit Court of Appeals has ruled that Oshay Jones abandoned the Plea Offer Claim, the court must **DENY** habeas relief on that claim.

ENTERED this 9th day of April, 2020.

Michael F. Urbanski

Digitally signed by Michael F. Urbanski
DN: cn=Michael F. Urbanski, o=Western
District of Virginia, ou=United States
District Court,
email=mikeu@vawd.uscourts.gov, c=US
Date: 2020.04.09 11:37:53 -04'00'

Michael F. Urbanski
Chief United States District Judge